CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAY 10 2007
JOHN F. CORCORAN, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JEROME MOORE, ) | |
|     Petitioner, ) | Civil Action No. 7:06CV00515 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| TERRY O'BRIEN, ) | By: Hon. Jackson L. Kiser |
|     Respondent. ) | Senior United States District Judge |

Petitioner, Jerome Moore ("Moore"), a Virginia Department of Corrections inmate proceeding pro se, brings this action for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, with jurisdiction vested under 28 U.S.C. § 1331. Specifically, Moore contends that the U.S. Parole Commission ("Commission") erred by applying the "new federal regulations," rather than applying the "old or displaced" D.C. Board of Parole ("Board") regulations in Petitioner's Parole Hearings in 2003 and 2006. (Pet'r Writ Habeas 5-6). Moore claims that this "retroactive application" created "significant risks" of prolonging his incarceration and, thus, violated the Ex Post Facto Clause of the Constitution. Id. Moore further contends that the Commission's decision to deny him parole in 2003 and in 2006 was "arbitrary" and "in violation of the Administrative Practices Act, 5 U.S.C. § 702 (2)(A)" ("APA").[1] Id. at 7. Respondent, Terry O'Brien ("O'Brien"), the Warden of U.S.P. Lee County ("Lee County"), filed a Motion to Dismiss or, in the Alternative, a Motion for Summary Judgment to which Moore filed a timely response in the form of a Motion for Summary Judgment,

---

[1] Because Petitioner is acting pro se, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore, they are construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

1

making the matter ripe for the court's consideration.[2] Upon careful review of the record, the court concludes that Respondent's Motion to Dismiss must be granted.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Moore pled guilty in the Superior Court of the District of Columbia to second degree murder while armed and to carrying a pistol without a license. For these crimes, respectively, the court sentenced him on February 28, 1991, to a 12 1/2 years to life and a 4 month to 1 year term of imprisonment, with the terms to be served consecutively. According to the presentence report, Moore shot and killed the victim over a dispute concerning a drug debt of between $50 and $200. Moore is currently a Federal Prisoner at U.S.P. Lee County in Jonesville, VA.

Moore was given his initial parole hearing by an examiner of the Commission at the Northeast Ohio Correctional Center, Youngstown, Ohio on January 21, 1999.[3] According to the government, the examiner applied the federal guidelines for D.C. offenders found at 28 C.F.R. § 2.80 (1999) at this hearing. After considering both pre-hearing and post-incarceration factors such as his young age at the time of the crime, a prison incident report of a homemade knife, and significant program achievement, the examiner determined that Moore had a total point score of 7, which indicated that parole should be denied at the initial proceeding. The examiner recommended that Moore should be denied parole and continued for a rehearing in July 2001. The Commission agreed with this recommendation and Moore was informed of the decision in a notice of action dated

---

[2] In an Order filed September 11, 2006, this court dismissed all claims against Edward F. Reilly, Jr., Chairman of the United States Parole Commission, another named respondent, and terminated him from this action.

[3] The court notes that pursuant to 28 C.F.R. § 2.80(a), the federal guidelines apply to Petitioner because his initial parole hearing was held on January 21, 1999. Title 28, Section 2.80(a)(4) states in part: "[f]or a prisoner whose initial hearing was held before August 5, 1998, the Commission shall render its decision by reference to the guidelines of the former D.C. Board of Parole in effect on August 4, 1998." Thus, as Moore's initial hearing was held after that date, the federal guidelines are applicable in his case.

2

February 24, 1999.

Moore received a rehearing on July 17, 2001. The hearing examiner recommended a 2-point reduction of the total point score for superior program achievement and a rehearing in January 2003. The Commission did not accept this recommendation and instead reduced the total point score by one point for ordinary program achievement and ordered that parole should be denied and a rehearing conducted in July 2003, after the service of 24 months.

Moore received another rehearing on April 8, 2003. According to the government, the revised federal guidelines at 28 C.F.R. § 2.80 (2002) were applied at this hearing. It was determined that Moore had been in confinement as a result of his offense behavior for 167 months and that his total guideline range was calculated at 170-186 months to be served before release. The hearing examiner recommended a presumptive parole date of November 8, 2004, after the service of 186 months. The Commission disagreed with the recommendation and ordered that Moore be denied parol and continued to a three-year reconsideration hearing in April 2006. The Commission explained in an amended notice of action dated October 21, 2003, that a departure from the guidelines was warranted because:

> [Y]ou are a more serious risk than indicated by your Base Point Score in that your offense was both premeditated and cold-blooded. You stalked the victim while armed with a loaded gun and once you found the victim you shot him because he owed you a small amount of money in connection with a drug debt.

(Resp't Mot. Dismiss Ex. H).

Moore was given a reconsideration hearing on March 22, 2006, at Lee County. The hearing examiner recommended a reduction in the prisoner's guideline range for superior program achievement (to 158-178 months) and a parole effective date of July 22, 2006. The Commission

3

agreed with the reduction for superior program achievement, but not the parole effective date. By a notice of action dated April 10, 2006, the Commission informed Moore that he was continued to a three-year reconsideration hearing in March 2009. The Commission gave the following reasons for a departure from the guidelines:

> [Y]ou are a more serious risk than indicated by your Base Point Score in that your offense was both premeditated and cold-blooded. You threatened to kill the victim days prior to the offense if the victim did not repay a drug debt of less than $200. You and another person were seen chasing the victim with a baseball bat. The day prior to the shooting, you were overheard stating that you had a gun and intended to shoot the victim. You then stalked the victim while armed and once you found the victim you shot him because he owed you a small amount of money in connection with a drug debt. Your behavior shows a lack of respect for human life. This lack of respect and your willingness to commit a murder for a small amount of money make[s] you a serious threat to the community if you are released to the community.

(Resp't Mot. Dismiss Ex. J).

## II. ANALYSIS

With the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, 111 Stat. 712, 734-37 (codified at D.C. Code §§ 24-101 et seq. (2001 & Supp. 2005)) ("Revitalization Act"), "Congress transferred responsibility for the imprisonment of all felons convicted under the D.C. Code from the District of Columbia to the federal government." Fletcher v. Reilly, 433 F.3d 867, 870 (D.C. Cir. 2006). The Act also "transferred authority over any imprisoned felon who is eligible for parole or reparole under the D.C. Code from the D.C. Board of Parole to the U.S. Parole Commission." Id. (internal quotation marks omitted). The Act required the Commission to begin the process of assuming its new jurisdiction by August 5, 1998, and the Board was to be abolished once the transfer of authority was complete. Id. The Act gives the Commission the "exclusive authority to amend or supplement any regulation interpreting or implementing the

4

parole laws of the District of Columbia with respect to felons, provided that the Commission adheres to statutory rulemaking procedures." Id. (internal quotation marks omitted). Thus, the Revitalization Act requires the Commission to follow the existing parole laws and rules of the District of Columbia, but also gives the Commission the same authority previously enjoyed by the D.C. Board of Parole to "amend and supplement" the D.C. parole rules, which it has done. See D.C. Code § 24-131(a). The Commission's amended version of the parole rules and guidelines of the D.C. Board of Parole was published at 63 Federal Register 39172 (July 21, 1998) and is codified at 28 C.F.R. § 2.80 et seq.[4]

### A. Ex Post Facto Claims

As previously noted, Moore claims an ex post facto violation. The Ex Post Facto Clause of Article I, Section 9, Clause 3 of the Constitution prohibits retroactive punishment for acts committed prior to the acts becoming illegal. As incorporated into the Fourteenth Amendment, this prevents a state from (1) charging a defendant with a crime that was not illegal at the time of the crime's commission; (2) aggravating a crime committed prior to enactment of the law; (3) increasing the punishment for a crime after it has been committed; or (4) changing the rules of evidence with respect to a crime already committed. See Garner v. Jones, 529 U.S. 244, 249 (2000); Calder v. Bull, 3 U.S. 386, 391 (1798); United States v. Mest, 789 F.2d 1069, 1071 (4th Cir. 1986) (citing Weaver v. Graham, 450 U.S. 24 (1981) (holding that an ex post facto law is an enactment, criminal or penal

---

[4] Pursuant to the Act, the Commission promulgated new federal regulations to replace the Board's parole and reparole regulations covering D.C. Code offenders. The D.C. Board's regulations had been importantly different from the federal parole/reparole regulations, because the Board had placed significant weight on post-incarceration behavior, including rehabilitative accomplishments, in making release determinations. Taking this difference into account, the new federal regulations adopted by the Commission mirrored the rehabilitative focus of the Board's former regulations covering *parole*. The Commission, however, did not adopt the Board's regulations covering decisions to grant *reparole* to D.C. Code offenders. See Fletcher v. Reilly, 433 F.3d 867, 869 (D.C. Cir. 2006).

5

in nature, which is retrospective and disadvantages the offender affected by it).

The Supreme Court has stated that retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept. Garner, 529 U.S. at 250. Whether retroactive application of a particular change in parole law respects the prohibition on ex post facto legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account, however. Bennett v. LaManna, Slip Copy, 2007 WL 781679, No. 3:06-499-PMD-JRM (D.S.C. March 13, 2007) (citing Garner at 250). The mere fact that a change in parole law occurred does not establish an ex post facto violation. See, e.g. Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 501-02 (1995).[5] Further, Parole Eligibility Guidelines which merely change the procedure followed by parole officers in determining parole eligibility do not violate the Ex Post Facto Clause. Warren v. Baskerville, 233 F.3d 204, 207 (4th Cir. 2000) (finding that a change in an administrative policy that was in effect at the time of a criminal's underlying offenses does not run afoul of the prohibition against ex post facto laws). However, laws which change the minimum or maximum sentences, eliminate all possibility of parole, or change the threshold requirements for attaining parole may violate the Ex Post Facto Clause. See Garner, 529 U.S. at 250 (finding that the controlling inquiry is whether retroactive application of the change in law creates a significant risk of increasing the measure of punishment attached to the covered crimes).[6]

---

[5] In Morales, the California law did not modify the statutory punishment for particular offenses, nor did it alter the standards for determining the initial date for parole eligibility or suitability for parole. Morales, 514 U.S. at 507. The amended law gave the parole board the discretion to decrease the frequency with which it considered parole for prisoners convicted of more than one homicide. Id. On these facts, the Court found that retroactive application of the law did not violate the Ex Post Facto Clause. Id. at 514.

[6] In Garner, the Court considered "whether the retroactive application of a Georgia law permitting the extension of intervals between parole considerations violates the Ex Post Facto Clause." Garner, 529 U.S. at 246. At the time the petitioner committed the offense, Georgia's Board of Pardons and Paroles Rules required parole reconsiderations every three years. Id. at 247. After the petitioner began serving his sentence, the Georgia Board

6

Courts have routinely rejected ex post facto claims of D.C. offenders whose convictions occurred before implementation of the Commission's guidelines and became eligible for parole after their implementation. The majority of circuits agree that the Commission's guidelines do not even constitute laws for purposes of ex post facto consideration. The Court of Appeals for the Fourth Circuit has not expressly addressed this issue, but has done so by implication. See McKissick v. U.S. Parole Comm'n, 295 F. Supp. 2d 643, 647 (S.D.W. Va. 2003) (holding that the guidelines do not constitute laws for purposes of ex post facto consideration as they operate only to provide a framework for the Commission's exercise of its discretion), aff'd 67 Fed. App'x 824 (4th Cir. 2003)[7]; see also Sheary v. U.S. Parole Comm'n, 822 F.2d 556, 558 (5th Cir. 1987) ("We have squarely held that there is no ex post facto violation in retroactive application of the Parole Commission guidelines." (internal quotation marks omitted)); Inglese v. U.S. Parole Comm'n, 768 F.2d 932, 935-36 (7th Cir. 1985) ("[W]e hold that the parole guidelines are not 'laws,' and therefore can be applied ex post facto without violating petitioner's constitutional rights."); DiNapoli v. Ne. Reg'l Parole Comm'n, 764 F.2d 143, 146 (2d Cir. 1985) (noting "federal parole guidelines . . . are not 'laws' within the meaning of the ex post facto clause."); cf. Fletcher v. Reilly, 433 F.3d 867, 869

---

amended its rules to require reconsideration at least every eight years. Id. While the Court of Appeals for the Eleventh Circuit found the law violative of the Ex Post Facto Clause, the Supreme Court reversed. While the Court noted the Georgia law was different from the California law in Morales, the Court found such differences were not dispositive. Id. at 251. The Court said, "The question is whether the amended Georgia Rule creates a significant risk of prolonging petitioner's incarceration. The requisite risk is not inherent in the framework of [the] amended [r]ule . . ., and it has not otherwise been demonstrated on the record." Id. The Court found the petitioner's claim to "rest[ ] upon speculation" because the record "contained little information bearing on the level of risk created by the change in law." Id. at 256. Because the Court could not determine whether retroactive application of the amendment "increases, to a significant degree, the likelihood or probability of prolonging petitioner's incarceration," the Court reversed and remanded the case. Id. at 256-57.

[7] Similar to the present case, the Petitioner in McKissick claimed that the Commission violated the Ex Post Facto Clause when it applied the Commission's District of Columbia parole regulations codified at 28 C.F.R. §§ 2.70, et seq., rather than applying the Board's rules in effect when Petitioner entered a guilty plea in the District of Columbia Superior Court.

7

(D.C. Cir. 2006) (rejecting position that parole/reparole regulations are not "laws" for ex post facto purposes). Following this precedent, Respondent's application of the amended federal parole guidelines, 28 C.F.R. §§ 2.80, et seq., in Moore's case is not an unconstitutional violation of the Ex Post Facto Clause.

Regardless, even assuming that parole guidelines constitute laws for ex post facto purposes, Moore still has not established a violation of the Ex Post Facto Clause. The application of the federal parole guidelines in Moore's case does not violate the Ex Post Facto Clause as a law does not violate the Ex Post Facto Clause unless it adds to the quantum of punishment. See Weaver, 450 U.S. at 30-31. As a "speculative and attenuated possibility . . . of increasing the measure of punishment" is not enough, Morales, 514 U.S. at 509, the change must create a sufficient risk of increasing Moore's punishment. Garner, 529 U.S. at 250. I find that such a risk is not present.

Moore seems to argue that if the Commission applied the Board's rules, not the Commission's amended rules, he would have been paroled on July 22, 2006. He has not made such a showing, however. Pursuant to the parole regulations adopted in 1987, the Board was able to "release a prisoner on parole in its discretion after the prisoner had served one-third of his sentence, provided that the prisoner substantially complied with prison rules, there was a reasonable probability the prisoner would not violate the law upon release, and releasing the prisoner would not be incompatible with the welfare of society." Ellis v. District of Columbia, 84 F.3d 1413, 1415 (D.C. Cir. 1996) (internal quotation marks omitted). The regulations permitted the Board to deviate from the outcome suggested by its scoring system in unusual circumstances.[8] Id. at 1416. The Ellis

---

[8] The regulations listed reasons for denying parole despite a low total point score, and some of those reasons included repeated failures under parole supervision, history of repetitive sophisticated criminal behavior, unusually extensive and serious prior record (at least five felony convictions), "other," and "other change in

8

court made it clear that the regulations vested substantial discretion in the Board and that the Board was not required to either grant or deny parole based upon the score attained. Id. at 1419. Similarly, pursuant to 28 C.F.R. § 2.80, the Commission has the discretion to deny parole even if the guidelines indicate parole is warranted:

> The Commission may, in unusual circumstances, grant or deny parole to a prisoner notwithstanding the guidelines. Unusual circumstances are case-specific factors that are not fully taken into account in the guidelines, and that are relevant to the grant or denial of parole. In such cases, the Commission shall specify in the notice of action the specific factors that it relied on in departing from the applicable guideline or guideline range.

28 C.F.R. § 2.80(n)(1).[9]

Thus, although Moore's score under the Board's guidelines may have indicated that he could be paroled, the Commission had the discretion to depart from the guidelines just as the Board had discretion to depart from the guidelines. Also, even though the existence of discretion is not determinative, Moore has not shown that the difference in how the Board and the Commission exercise discretion, if any, creates a sufficient or substantial risk of prolonging his incarceration. See Fletcher, 433 F.3d at 876-77. The Notices of Action dated October 21, 2003 and April 10, 2006, indicate that the Commission denied parole in spite of his score because the Commission found a departure from the guidelines warranted. The Commission supported their departure by pointing to

---

circumstances." See Ellis, 84 F.3d at 1416; see also D.C. Mun. Regs. tit. 28, § 204.22, Appendix 2-1.

[9] Some factors that may warrant a decision above the guidelines include (but are not limited to) the following: (1) a poorer parole risk than indicated by the score or (2) a more serious parole risk. 28 C.F.R. § 2.80(n)(2). Within these two considerations are factors such as unusually persistent failure under supervision, unusually extensive prior record, prior record of violence more extensive or serious than taken into account in the guidelines, current offense demonstrates extraordinary criminal sophistication, unusual cruelty to the victim, and additional serious offenses committed after (or while on bond or fugitive status from) current offense that show unusual capacity for sustained, repeated violent criminal activity. Id.

9

the fact that Moore stalked the victim and shot him because the victim owed Moore a small amount of money for a drug debt. As many of the upward departure factors are substantially similar under both sets of guidelines, Moore has not demonstrated a sufficient risk of a prolonged incarceration.

Furthermore, Moore relies entirely upon the holding of the recent case of <u>Fletcher v. Reilly</u>, 433 F.3d 867, 869 (D.C. Cir. 2006), as support that retroactive application of amended parole standards to his review violates the Ex Post Facto Clause. In <u>Fletcher</u>, the United States Court of Appeals for the District of Columbia Circuit recognized that retroactive changes in laws governing parole of prisoners may violate the Ex Post Facto Clause if the retroactive application creates a significant risk of prolonging an inmate's incarceration. <u>Fletcher</u>, 433 F.3d at 869. The court noted that a significant risk of increasing punishment can be demonstrated with (1) a showing of facial distinctions between the new and the old regulations, or (2) by introducing evidence that practical implementation of the new regulations by the agency will result in a longer period of incarceration. <u>Id.</u> at 877. The court concluded that the amended regulations for reparole were "substantially different" from the regulations they replaced because the new regulations did not take post-incarceration behavior into account, and the court concluded that retroactive application of the amended regulations violated the Ex Post Facto Clause. <u>Id.</u> at 878.

This court finds that Moore's reliance on <u>Fletcher</u> is misplaced, as the holding in <u>Fletcher</u> can be distinguished. Since Moore is challenging retroactive application of the amended *parole* regulations, not the *reparole* regulations reviewed in <u>Fletcher</u>, the case is inapposite as to this particular issue. See <u>Fikes v. Minor</u>, No. 3:CV-06-0944, 2006 WL 1620225 (M.D. Pa. June 08, 2006). Although the prior version of the regulations governing reparole suitability for D.C. Code offenders took into account post-incarceration behavior as a factor to be considered by the D.C.

10

Parole Board, the amended reparole regulations eliminated this factor from consideration by the Commission in reparole decisions. Id. By contrast, the amended regulations governing parole suitability for D.C. Code offenders and the prior version they replaced both take into account post-incarceration behavior. Id. Specifically, the Commission's § 2.80 guidelines for D.C. offenders carried over the former Board's consideration of institutional program performance, and authorization of a subtraction from the total guideline range for ordinary and superior program achievement, when the Commission adopted the 2000 version of the guidelines. Therefore, since the two versions of the parole regulations consider the same factors, they are not facially distinguishable and Fletcher is not applicable. Accordingly, retroactive application of the amended parole standards does not create a significant risk of prolonged incarceration for Moore and consequently does not violate the Ex Post Facto Clause.[10]

## B. Administrative Practices Act Claims

Moore also alleges that the Commission's parole denial in 2003 and in 2006 was "arbitrary" and in violation of the APA. The Commission has sole discretion in determining when to grant parole under the Parole Act. See 18 U.S.C. § 4218(d) (parole decisions are actions "committed to agency discretion" under the APA). Furthermore, an agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to the statute. See Chevron v. Natural Res. Def. Council, 467 U.S. 837, 844 (1984); see also Garcia v. Neagle, 660 F.2d 983, 988-89 (4th Cir. 1981) (finding that parole decisions are only subject to

---

[10] Furthermore, I find that Moore cannot reasonably argue that practical implementation of the Commission's amended guidelines will result in a longer period of incarceration as he has certainly benefitted from several point reductions in his total point score for superior program achievement under the Commission's guidelines just as he presumably would have under the Board's substantially similar guidelines. See (Resp't Mot. Dismiss Ex. C, G, H, and J).

11

review for compliance to the Constitution, statutory law, and published regulations). Not only did the Commission adequately explain its decisions and properly note specific factors to support its reasoning in each Notice of Action, but Moore has not provided any evidence to suggest that the actions of the Commission were arbitrary or capricious. A conclusory allegation that the decision was "arbitrary" is not sufficient evidence. Additionally, I cannot find that the Commission has violated any applicable law. Therefore, I find that it was not an abuse of discretion for the Commission to deny Moore parole and to set his next hearing for thirty-six months from the date of his last hearing.

### III. CONCLUSION

In conclusion, I find that Moore has failed to state a claim upon which relief may be granted. Accordingly, I will grant Respondent's Motion to Dismiss and will deny Petitioner's Motion for Summary Judgment. An appropriate Order shall be issued this day. The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to Petitioner and to counsel of record for Respondent.

ENTER: This 10th day of May, 2007.

Hon. Jackson L. Kiser
Senior United States District Judge